# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA** | : | **Case No.: 23-CR-_____** |
| | : | |
| **v.** | : | **18 U.S.C. § 111(a) (Assault on** |
| | : | **Certain Officers)** |
| **THOMAS ANDREW CASSELMAN,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Thomas Andrew Casselman, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.      On the afternoon of January 6, 2021, the defendant was among the rioters amassed on the West Plaza of the Capitol Building. The defendant was positioned in front of an established police line maintained by Metropolitan Police Department (MPD) officers who were positioned in an arc-formation around the West Plaza to prevent rioters' entry into the terracing of the Building and the Building itself. MPD officers were present at the Capitol to reinforce and assist U.S. Capitol Police, who were overwhelmed by the large numbers of rioters present on Capitol Grounds.

9.      As police officers maintained their line behind bike rack barriers to protect the Capitol, the defendant verbally confronted officers, yelling things like "you're fighting the wrong fight" and "you should be facing that way" (in other words, that the officers should be facing the Capitol, like the rioters were, rather than defending the Capitol, with their back towards it).

10.     The established police line began to fall at approximately 2:25 p.m. As other rioters fought with officers, the defendant stepped forward and deployed a cannister of oleoresin capsicum ("OC")-based spray in close range of several officers. The OC-based spray directly hit MPD Lieutenant L.H. and MPD Officers B.S., P.N., and B.R., leaving bright orange residue visible on their clothing and protective equipment.

11.     After participating in the riot at the Capitol, Casselman made the following search inquiries online:

a.  "charges for dc rioters" (inquiry made on January 16, 2021)
b.  "Capitol arrests lists" (January 16, 2021)
c.  "how many times has capitol hill been breached" (January 16, 2021)
d.  "the statute of limitations for assault on a police officer" (January 18, 2021)
e.  "the statute of limitations for assault on a federal officer" (January 18, 2021)
f.  "assaulting a federal officer punishment" (January 18, 2021)
g.  "The Federalist Papers about overthrowing the government" (May 25, 2021)
h.  "what is the definition of domestic terrorist" (May 28, 2021)
i.  "fbi wanted list" (August 25, 2021)
j.  "fbi wanted list jan 6" (August 25, 2021)
k.  "assault on a police officer" (August 25, 2021)
l.  "assault with a deadly weapon on a police officer" (August 25, 2021)
m.  "statute of limitations on assaulting a police officer" August 26, 2021)
n.  "what does the fbi need to have a warrant" (September 1, 2021)
o.  "how long does Verizon keep text messages" (September 14, 2021)

### *Elements of the Offense*

12.     The parties agree that 18 U.S.C. § 111(a) requires the following elements:

a.  First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Metropolitan Police Lieutenant L.H. and Officers B.S., P.N., and B.R.

b.  Second, the defendant did such acts forcibly.

c.  Third, the defendant did such acts voluntarily and intentionally.

d.  Fourth, at the time of the assault, Lieutenant L.H. and Officers B.S., P.N., and B.R. were assisting officers of the United States who were then engaged in the performance of their official duties.

e.  Fifth, the defendant made physical contact with Lieutenant L.H. and Officers B.S., P.N., and B.R.

### *Defendant's Acknowledgments*

13.    The defendant knowingly and voluntarily admits to all the elements as set forth above.  Specifically, the defendant admits that he forcibly assaulted Metropolitan Police Lieutenant L.H. and Officers B.S., P.N., and B.R. and made physical contact with their persons through the use of OC spray in close range while Lieutenant L.H. and Officers B.S., P.N., and B.R. were engaged in the performance of their official duties.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Katherine E. Boyles*
KATHERINE E. BOYLES
Assistant U.S. Attorney
D. Conn. Fed. Bar No. PHV20325
601 D Street, N.W.
Washington, D.C. 20579
(203) 931-5088
Katherine.boyles@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Thomas Casselman, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 2/27/2024

Thomas Casselman
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 2/27/2024

Renae Alt-Summers
Attorney for Defendant